FILED
United States Court of Appeals
Tenth Circuit

March 3, 2015

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

RAFAEL FRIAS; PATRICIA
MENDEZ-MANRIQUEZ,

      Plaintiffs - Appellants,

v.

CHRIS THE CRAZY TRADER, INC.,
a Colorado corporation,

      Defendant - Appellee.

No. 14-1284
(D.C. No. 1:13-CV-01240-MSK-KLM)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **MORITZ**, **PORFILIO**, and **BALDOCK**, Circuit Judges.

Plaintiffs Rafael Frias and Patricia Mendez-Manriquez appeal from the district

court's July 2, 2014, opinion and order denying their motion to certify a question of

state law to the Colorado Supreme Court and granting partial summary judgment to

defendant on their claims alleging violations of the Colorado Consumer Protection

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Act (CCPA), Colo. Rev. Stat. Ann. § 6-1-708(1)(a)(I) & (III), and civil theft under Colo. Rev. Stat. Ann. § 18-4-405. They also renew their motion to certify a question of state law to the Colorado Supreme Court. We have jurisdiction under 28 U.S.C. § 1291, deny certification, and affirm.

## 1. Background

The facts construed in plaintiffs' favor are as follows. On March 30, 2013, plaintiffs accepted delivery of a used car from defendant, believing that financing for a loan was guaranteed. A month later, defendant called them and told them it had a better deal for them. Plaintiffs signed a new contract for the same car on April 30, still believing that financing was guaranteed. A few days later, however, defendant told them that financing was denied, and they must bring the car back. When plaintiffs returned the car, defendant retained more than half of their $1500 down payment as payment for their temporary use of the car.

Plaintiffs filed this suit against defendant, asserting a federal claim under the Truth in Lending Act (TILA), 15 U.S.C. §§ 1601-1667f, and state-law claims under the CCPA and for civil theft. Defendant promptly mailed a check to plaintiffs to refund the rest of their down payment, which plaintiffs apparently accepted. Defendant then moved for partial summary judgment on plaintiffs' state-law claims. Plaintiffs filed a response and a motion to certify a question of state law on their CCPA claim.

On July 2, 2014, the district court entered its decision denying plaintiffs' motion to certify a question of state law and granting partial summary judgment to defendant on plaintiffs' state-law claims. Although the court's order did not mention certifying its decision for immediate appeal under Fed. R. Civ. P. 54(b), the district court clerk entered a judgment on a separate document styled "FINAL JUDGMENT PURSUANT TO FED. R. CIV. P. 54(b)." D.C. No. 1:13-cv-01240-MSK-KLM, Doc. 30. Plaintiffs filed their notice of appeal on July 23.

On October 24, plaintiffs filed a notice with the district court that they had settled their TILA claim with defendant. A few days later, plaintiffs filed a motion asking the court to retain jurisdiction over their CCPA claim, so that the July 2 judgment would be "final for purposes of appellate review." *Id.*, Doc. 45, at 2. On December 18, 2014, the district court entered a minute order dismissing the TILA claim with prejudice, in light of the parties' settlement, and denying plaintiffs' motion to retain jurisdiction over their CCPA claim as moot, because the court had already entered judgment on the state-law claims. *Id.*, Doc. 46. The court ordered the clerk to close the case. *Id.* No other entries appear on the district court docket.

### 2. Appellate Jurisdiction

A question regarding our jurisdiction over this appeal arose from the sequence of events in the case. Plaintiffs filed their notice of appeal under Rule 54(b) in July 2014, shortly after the district court entered both its decision granting partial summary judgment to defendant on plaintiffs' two state-law claims and a judgment

- 3 -

referencing Rule 54(b). Because the TILA claim had not yet been resolved, this court promptly entered an order directing plaintiffs either to obtain a more detailed order from the district court articulating its reasons for certifying its July 2 opinion and order for immediate appeal, or to file a brief establishing that the July 2 judgment entered by the district court clerk sufficiently addressed Rule 54(b) concerns to confer appellate jurisdiction under Rule 54(b). *See Stockman's Water Co. v. Vaca Partners, L.P.*, 425 F.3d 1263, 1265-66 (10th Cir. 2005) (discussing the factors the district court should consider when certifying a nonfinal decision for immediate appeal under Rule 54(b), in order to allow "a meaningful review" of its exercise of discretion). Plaintiffs filed a brief, and this court entered an order referring the jurisdictional question to the merits panel. The parties' merits briefs in this court both indicate that the case has not reached a final judgment in the district court, but they filed their briefs here before the district court entered its December 18 order disposing of the outstanding TILA claim and motion to retain jurisdiction.

We conclude that a Rule 54(b) certification is no longer required for this appeal because all claims and motions were decided by the district court as of December 18, 2014. We have previously held "that a notice of appeal filed before the district court disposes of all claims is nevertheless effective if the appellant obtains either certification pursuant to Fed. R. Civ. P. 54(b) or final adjudication before the court of appeals considers the case on its merits." *Ruiz v. McDonnell*, 299 F.3d 1173, 1179 (10th Cir. 2002). Our rule is that "the premature notice simply

ripens on the date of certification or final adjudication, and the filing of a second notice of appeal is unnecessary." *Id.* Because the district court's December 18, 2014, order has the requisite "indicia of finality," plaintiffs' notice of appeal, even if premature when filed, ripened on December 18. *Elm Ridge Exploration Co. v. Engle*, 721 F.3d 1199, 1209 n.5 (10th Cir. 2013) (internal quotation marks omitted).

A second question regarding our jurisdiction arises from defendant's assertion in its brief on appeal that because it refunded the rest of plaintiffs' down payment, they had no injury in fact as of a few days after they filed suit. The assertion that plaintiffs lacked an injury in fact raises questions as to whether they had standing to sue, whether we could redress their alleged injury, and whether the case became moot. *See Oklahoma v. Hobia*, 775 F.3d 1204, 1210 (10th Cir. 2014) ("A case becomes constitutionally moot when the parties no longer have a legally recognizable interest in the result."); *Kitchen v. Herbert*, 755 F.3d 1193, 1201 (10th Cir.) (addressing standing to sue and redressability), *cert. denied*, 135 S. Ct. 265 (2014). We are obligated to raise and resolve such questions of Article III jurisdiction sua sponte. *Kitchen*, 755 F.3d at 1201.

We conclude that even if plaintiffs accepted defendant's full refund of their down payment, the district court was not deprived of jurisdiction, and neither are we. Plaintiffs did not sue for a refund, but for actual damages, statutory damages, costs, and attorney's fees. D.C. No. 1:13-cv-01240-MSK-KLM, Doc. 1, at 8. Even if they could no longer prove that they suffered actual damages, because defendant repaid

their down payment in full, all of the statutes under which they sued provide for statutory damages as well. *See* 15 U.S.C. § 1640(a)(2)(A)(iv) (providing statutory damages under TILA, "in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property . . . , not less than $400 or greater than $4,000"); Colo. Rev. Stat. Ann. § 6-1-113(2)(a) (providing damages under the CCPA of "(a) The greater of: (I) The amount of actual damages sustained; or (II) Five hundred dollars"); Colo. Rev. Stat. Ann. § 18-4-405 (providing in a case of civil theft that "the owner may recover two hundred dollars or three times the amount of the actual damages sustained by him, whichever is greater"). Plaintiffs asserted the requisite injury in fact, and we could have redressed their asserted injury if they had shown that the district court erred. *See Utah Animal Rights Coal. v. Salt Lake Cnty.*, 566 F.3d 1236, 1240 (10th Cir. 2009) (noting that "[t]he Supreme Court has defined 'injury in fact' as 'an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical'") (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992))). The case is not moot, we have jurisdiction over the appeal, and we turn to the merits.

### 3. Discussion

Plaintiffs do not challenge the district court's disposition of their claim for civil theft, but only the court's disposition of their CCPA claim. The court set out the five elements of a CCPA claim for damages under Colo. Rev. Stat. Ann. § 6-1-113 as

established by the Colorado Supreme Court, including the requirement that plaintiffs show that "the challenged practice significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property." Aplt. App. at 57-58 (citing *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998)). The court acknowledged that no Colorado case explicitly addresses whether the "public impact" element applies to an alleged violation of one of the "specific provisions" in Part 7 of the CCPA, such as Colo. Rev. Stat. Ann. § 6-1-708(1)(a), which defines deceptive trade practices in the sale of motor vehicles. Aplt. App. at 55, 58. The court rejected, however, plaintiffs' argument that the "public impact" element should not apply to an alleged violation of § 6-1-708(1)(a), reasoning that "there is no indication that Colorado intends to make such [a] distinction" in the elements of CCPA claims. Aplt. App. at 58. The court also pointed out that the general definition of 'deceptive trade practice' in the CCPA, Colo. Rev. Stat. Ann. § 6-1-105, "incorporates all violations of the provisions found in part 7," so "there is no need to make such a distinction." Aplt. App. at 58 (citing Colo. Rev. Stat. Ann. § 6-1-105(1)(x)). The court denied plaintiffs' motion to certify the state-law question to the Colorado Supreme Court. *Id.*

The district court then determined as a matter of law that plaintiffs had failed to show the required public impact for their CCPA claim. The court noted that their evidence showed only that eleven other consumers were affected by defendant's alleged practice of retaining a portion of the down payment after financing was not

obtained, for a total of twelve instances out of 5739 car sales. *Id.* at 60-61. The court pointed out that plaintiffs had presented *no* evidence "that the Defendant 'guaranteed' financing to or failed to advise potential purchasers that if financing was not obtained, a car would have to be returned." *Id.* at 60. The court observed that the Colorado Supreme Court has found no public impact "where only 3 dealers, out of 550 worldwide, were affected by the alleged deceptive trade practices of a manufacturer supplier." *Id.* at 61 (citing *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 150 (Colo. 2003)). The court rejected plaintiffs' argument that a general declaration in Colo. Rev. Stat. Ann. § 12-6-101(1)(a)—that "[t]he sale and distribution of motor vehicles affects the public interest"—is sufficient to establish public impact under the CCPA. Aplt. App. at 61 (internal quotation marks omitted). The court reasoned that "the Colorado Supreme Court has emphasized that the public impact contemplated by the CCPA relates to the challenged *practice*," and the declaration in § 12-6-101(1)(a) "does not refer to the practices that Plaintiffs challenge." Aplt. App. at 61 (citing *Brodeur v. Am. Home Assur. Co.*, 169 P.3d 139, 156 (Colo. 2007)). Accordingly, the court granted summary judgment to defendant on plaintiffs' CCPA claim.

Plaintiffs argue that the district court erred: (1) in failing to find that a single violation of Colo. Rev. Stat. Ann. § 6-1-708(1)(a) is a *per se* violation of the CCPA, because "[t]he Specific Provisions portion of the CCPA does not contain a public impact requirement," Aplt. Br. at 15; and (2) in finding as a matter of law that twelve

consumers affected by the same practice, out of 5739 car sales, was not enough to show sufficient public impact, because there is no mathematical formula for that determination and because public impact is a disputed question of fact. The question of state law plaintiffs ask us to certify is "whether a deceptive trade practice contained within the 'Specific Provisions' of the Colorado Consumer Protection Act requires a separate showing of public impact." Aplt. Mot. to Certify Question of Law at 5.

"We review a district court's grant of summary judgment de novo, applying the same legal standard as the district court" under Fed. R. Civ. P. 56(a). *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 997 (10th Cir. 2011). A summary judgment should be entered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In applying this standard, we view the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to the nonmoving party." *Twigg*, 659 F.3d at 997. "When exercising jurisdiction over pendent state claims, we must apply the substantive law of the forum state and reach the same decision we believe that state's highest court would, just as we would if our jurisdiction rested on diversity of citizenship." *Lytle v. City of Haysville*, 138 F.3d 857, 868 (10th Cir. 1998) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).

We have carefully reviewed plaintiffs' arguments in light of the district court record and the governing law. We are not persuaded that the district court erred in concluding that the element of significant public impact established by the Colorado Supreme Court for CCPA claims applies to a claim brought under the specific provision in § 6-1-708(a). We are also not persuaded that the court erred in concluding that plaintiffs' evidence was insufficient as a matter of law to show significant public impact. Plaintiffs do not identify where they argued to the district court that public impact is a disputed question of fact, so we do not address that argument. *See Fairchild v. Workman*, 579 F.3d 1134, 1144 (10th Cir. 2009) ("[W]e ordinarily do not decide issues raised for the first time on appeal."). We affirm the district court's grant of summary judgment in favor of defendant on plaintiffs' CCPA claim for substantially the reasons set forth in its July 2, 2014, opinion and order.

Appellants' motion to certify a question of law to the Colorado Supreme Court is denied. The judgment of the district court is affirmed.

Entered for the Court

Bobby R. Baldock
Circuit Judge